



# *Sheriff Chris Quire*

**Sheriff of Franklin County, P.O. Box 5260, Frankfort, KY 40602**
**Phone:(502) 875-8740 Fax: (502) 875-8738**

As promised this office would be transparent, we have the full report from the independent investigation in reference to the complaint filed against Detective Farmer on January 8th 2021. The investigation outlines four recommendations which have all been met or exceeded.

1) Letter of Caution-Conduct Unbecoming issued to Detective Farmer
2) Detective Farmer will be assigned to general investigations
3) All employees have been trained on the current social media policy and instructed as stated in the policy that all titles, pictures and affiliations with their employment at the Franklin County Sheriff's Office have been removed from their social media platforms.
4) Robust backgrounds checks have taken place under this administration for new hires.
5) Performance appraisals will be done annually on each employee.



EXHIBIT B

# Advanced Investigative Solutions Inc.

### Comprehensive Service to the Corporate and Legal Communities

●

Complex Investigations

Forensic Accounting

Polygraphy

Mediation

Security Assessment

Internal Control Analysis

Training

Crisis Management

Law Enforcement Liaison

Background Investigations

Statement Analysis

Financial Analysis

Trial Preparation

Consulting

February 8, 2021

Mr. Chris Quire
Sheriff
Franklin County, Kentucky
974 River Bend Rd.
Frankfort, KY 40601

Dear Sheriff Quire,

As you are aware, I was retained by you and your office on January 14, 2021, to conduct an investigation concerning issues surrounding Detective Jeffrey Farmer. As I told you and your staff, I was willing to assist your office in this matter with the condition that there were no limits placed on my efforts and with the understanding that my investigation would be independent of your office.

## <u>Scope</u>

The scope of this investigation is as follows:

1. Interviewed over 30 individuals;
2. Analyzed case data from the Sheriff's Office files;
3. Reviewed Farmer's personnel files;
4. Examined media reports.

I have attempted to identify and focus this investigation on several key issues.

1. Did Detective Farmer engage in any criminal activity while attending the Washington, DC, event on January 6, 2021?
2. Did Detective Farmer violate any departmental policy while attending the Washington, DC, event on January 6, 2021?
3. Do the assertions made in the January 8, 2021, letter from the Public Defenders in Franklin County have merit?

## Details

<u>Did Detective Farmer engage in any criminal activity while
attending the Washington, DC, event on January 6, 2021?</u>

Based on independent interviews of all four individuals attending the
event, the following information was learned:

Detective Farmer was invited to accompany three other individuals who
were planning to attend the Washington, DC, event.  An individual other
than Farmer organized the trip and made travel and hotel arrangements.
The other thre attendees are not close friends with Farmer.  One
individual had never met Farmer before this trip.  According to all four
individuals, they decided to attend the event in order to show their
support for President Trump and his accomplishments as he was leaving
office.  They all understood Trump was scheduled to speak at the event.

Three of the individuals departed the Louisville area about 6 PM on
January 5, 2021, and picked up Farmer in the Lexington area about 7 PM
on their way to Washington, DC.  They arrived in the DC area about
3 AM and checked into a hotel.  At about 5:15 AM, they walked to a
Metro train station and caught a train to the Ellipse area of the National
Mall.  They stood in line for several hours and then decided to forego the
line and simply walk around the National Mall where they could hear the
speakers.  They all described a very friendly crowd from many different
states and some from other countries.  According to the others, Farmer,
particularly, spoke with individuals in the crowd and repeatedly
commented to his buddies on the diversity of the crowd and the
friendliness of the people.  Trump was late appearing and concluded his
speech after 1 PM.  One individual in the group was tired and decided to
return to the hotel by himself.  The other three (including Farmer)
meandered the National Mall together, searched for bathrooms, bought
souvenirs and ate snacks from their backpacks and had casual
conversations with others.  They were waiting on the next part of the
program that was to occur closer to the Capitol.  As time passed, they
generally followed the crowd at a very slow pace toward the Capitol.
The crowd was dense and moved as a group.  About 2-3 PM, police cars

2

and sirens were heard and seen headed towards the Capitol. Shortly thereafter, Farmer and his buddies received alerts on their phones stating the Mayor had instituted a 6 PM curfew. They could see some commotion on the Capitol steps. All three decided it was time to leave the area. As they walked away from the Capitol, they stopped at the Navy Memorial before heading to the Metro station and heading back to the hotel. Once at the hotel, they bought Five Guys burgers, ate in the hotel lobby and were in bed by 7 PM.

While I have not conducted any type of background on the individuals accompanying Farmer to DC, my experience suggests these are honest individuals who appeared to be forthright in their recollections. One individual has a DOD security clearance whose livelihood depends on that clearance. He made it clear that he cannot afford to associate with questionable characters or engage in questionable activities.

All four attendees stated that they were never closer than 500-600 yards from the Capitol steps. There is no indication Farmer crossed any police barriers, engaged in any violence, nor is there any evidence Farmer entered the Capitol.

In conclusion, there is simply no evidence I have uncovered suggesting Farmer engaged in any criminal acts while attending the Washington, DC, event on January 6, 2021.

<u>Did Detective Farmer violate any department policy while attending the Washington, DC, event on January 6, 2021?</u>

Farmer's attendance at the Washington, DC, event was done with the knowledge of the command staff at the Sheriff's Office. There has been no suggestion that his mere attendance at the event constitutes any illegality or policy violation. The more pressing issue is whether Farmer violated departmental policy by posting information about his trip on the Internet and agreeing to a television interview concerning his trip.

As background, earlier in 2020 Farmer posted material on Facebook that resulted in a few complaints being lodged with the Sheriff's Office. As a result, Farmer was directed by the Sheriff to remove those posts. Farmer readily agreed to the removal of the information from Facebook and did

so immediately.  At the same time, he was made aware of and/or reminded of the department's "Social Networking Sites" policy. Section IV of the Standard Operating Procedures states in part, "Employees of the Franklin County Sheriff's Office who utilize networking sites, blogs, twitter or other mediums of electronic communication in their off-duty time shall maintain an appropriate level of professionalism and appropriate conduct so as to not broadcast in a manner which is detrimental to the mission and function of the Franklin County Sheriff's Office or otherwise impairs the efficiency of the Franklin County Sheriff's Office."

Other sections of the policy prohibit employees from identifying themselves as employees of the Sheriff's Office and/or from promoting violence or disseminating information in favor of subversive activities.

While at the Washington, DC, event, Farmer posted to his Facebook account pictures and information about the event and his presence at the event.  There is no indication he encouraged violence or subversive activities and he did not identify himself as an employee of the Franklin County Sheriff's Office.

On his return trip, Farmer was contacted by a Lexington reporter and he and his colleagues agreed to a television interview via FaceTime video. During that interview, Farmer was not identified as being an employee of the Franklin County Sheriff's Office and he described the violence as "disgraceful."

Based on Farmer's posts on Facebook earlier in 2020 that resulted in complaints being lodged with the Sheriff and the subsequent directive that Farmer remove the posts, Farmer should have been hypersensitive to the consequences of utilizing Facebook or any social media site.  In addition, as Farmer was departing the Sheriff's Office, at least one commander reports of telling Farmer to "be careful (referring to COVID) and don't be posting that stuff on Facebook."  Farmer recalls that comment but thought the comment was an off-the-cuff remark and not an official command.

Farmer's Facebook posts clearly resulted in controversy and precipitated the letter written by the Public Defender's Office that was critical of Farmer.  Farmer knew, from firsthand experience, Facebook posts can

4

quickly escalate and become a liability to the Sheriff and his office.
Farmer appears to have violated departmental policy by his Facebook
posts and the television interview.  He knew or should have known his
name is well known in the Frankfort community as a Deputy Sheriff and
he should have realized "publicizing" his attendance at the Washington,
DC, event would be "detrimental to the mission and function of the
Franklin County Sheriff's Office or otherwise impair the efficiency of the
Franklin County Sheriff's Office."  He did not have prior approval for
either the Facebook post or the television appearance and in fact was told
not to post the event on Facebook.  He used questionable judgment in
doing so.

<u>Do the assertions made in the January 8, 2021, letter from
the Public Defenders in Franklin County have merit?</u>

On January 8, 2021, the Franklin County Public Defender's Office sent a
letter to you outlining a multitude of concerns they had regarding "the
conduct" of Jeffrey Farmer.  It has been determined the letter was crafted
by attorney Patrick Brennan.  As you know, it was signed by five public
defenders.

I believe it best to address each of the assertions outlined by the Public
Defenders individually.

   A. *We have no indication that Deputy Farmer left the crowd when
      rioting began nor do we have any proof that Deputy Farmer was
      not himself actively involved in treasonous behavior.*

Based on my investigation to date, I have concluded Farmer did in fact
depart the National Mall area shortly after he became aware of violent
behavior by others and he did not engage in such behavior himself.  He
was not close to the Capitol itself and never entered the Capitol.  The
Federal Bureau of Investigation (FBI) has indicated it has no reason to
presently think otherwise.  Farmer and his colleagues never intended to
engage in any type of disturbance and they have publicly condemned the
violence.

Possibly of equal importance is the language used by the Public
Defenders.  They have clearly and repeatedly questioned Farmer's

5

fairness and impartiality when enforcing the law. I would suggest if the Public Defenders were truly interested in fairness their statement would have indicated they had <u>no</u> evidence to suggest Farmer <u>was</u> involved in rioting and they had <u>no</u> evidence to suggest he engaged in treasonous behavior. Their initial accusation against Farmer clearly suggests their own bias and sets the tone for the remainder of their letter.

B. The second paragraph of the letter states as follows:

> *Deputy Farmer boasted about his involvement in many outlets, including a Facebook post in which he stated "Gonna be an epic day!! Most diverse group of people I've ever seen in my life." (Deputy Farmer has since deleted his Facebook account.) The fact is that a substantial number of individuals who attended this event are white supremacists waving the flag of confederacy. How can minorities in Frankfort feel protected and served by an individual who so clearly flaunts his fraternization with racists?*

In this paragraph, the Public Defenders claim Farmer "boasted" "in <u>many</u> outlets" about his involvement in the Washington, DC, event. Farmer publicized his attendance at the DC rally on Facebook and during his interview on WLEX. The word "many" is inaccurate and misleading.

The statement continues with the assertion a <u>substantial</u> number of attendees are white supremacists waving the confederate flag. Neither I nor the Public Defenders have any idea how many white supremacists attended the event. The Chief Public Defender admitted they have no idea how many white supremacists attended the event and similarly acknowledged he had no idea if white supremacists were waving confederate flags. I have reviewed over 50 photographs taken by the media of the crowd at the National Mall and I saw dozens of American flags and did not see a single confederate flag. By no means am I concluding there were no confederate flags but many of the Public Defenders' statements are unsubstantiated and designed to unfairly characterize Farmer.

In the same paragraph, the letter claims that Farmer flaunts his fraternization with racists as a result of his attendance at the event in Washington, DC. It appears this entire paragraph and much of the letter

is designed to conclude Farmer is a racist. I have interviewed judges, prosecutors, law enforcement officers at all levels, and several African American individuals who have worked with Farmer and not a single person opined that Farmer was a racist. No one has heard him make racially insensitive remarks and several individuals stated he has come to the defense of African Americans when they are insulted. I have not uncovered any evidence suggesting Farmer is a racist.

    C. The third paragraph of the letter from the Public Defenders states:

> *Deputy Farmer often charges all individuals in a vehicle because he believes they are guilty by association. By that logic, what does that say about yourself and your department?*

According to the Chief Public Defender, Farmer will often charge all individuals in a vehicle when drugs are found in a common area and no one admits ownership of the drugs. The Public Defender was unable to provide any statistics as to how often Farmer has charged multiple individuals in a vehicle. Regardless of frequency of such a situation, this is a customary practice among law enforcement and is not based on "guilt by association." The police officer charges the vehicle's occupants and allows the court system to sort out who is legally responsible for the contraband. The Chief Public Defender acknowledged half of the court cases support this practice and half of the court cases do not. He stated this is a matter he thinks will ultimately be litigated in a higher court. He also acknowledged that he has no firsthand knowledge or evidence that Farmer charges in this manner due to "guilt by association" but more than likely guilt by complicity. In addition, the Public Defender acknowledged other law enforcement agencies routinely engage in the same practice.

More importantly, the Judges I spoke with were familiar with the letter and did not express any concern over this practice.

    D. The next paragraph is as follows:

*This incident at the Capitol is a continuation of poor judgment, recklessness, and bias demonstrated by Deputy Farmer. In the past, Deputy Farmer has posted publicly about his disbelief in systematic racism and unconscious bias. He has been involved in many cases which reflect targeting and racial profiling. He has a colored history including resigning from the City of Versailles police department in exchange for no further pursuit of criminal charges against him.*

In this paragraph, the Public Defenders make a myriad of accusations against Farmer. The evidence I have uncovered to date suggests Farmer has used poor judgment in posting matters on Facebook on at least two occasions. In both instances, his posts have caused negative attention to be brought upon the Sheriff's office. However, the overwhelming majority of those interviewed clearly disagree with the assertions that Farmer is reckless and engages in racial profiling and targeting individuals based on race. Farmer was consistently described as one of the hardest working and effective officers in Franklin County and he is a respected Detective who is perceived to be honest and fair.

It is my belief that the opinions of judges may be the fairest measure of the accusations made against Farmer. They are impartial and the arbiter of justice. They routinely have firsthand experience with Farmer in Court. In interviews with Franklin County judges, not a single judge has seen evidence of bias or racial targeting by Farmer. They stated Farmer's affidavits are thorough and they cannot recall an instance when evidence obtained by Farmer has been suppressed nor do they recall instances when defendants charged by Farmer have been acquitted.

Even the Chief Public Defender could not provide specific examples of Farmer's racial bias, targeting or profiling. He stated that information primarily came from a group in the community called Focus on Race Relations (FORR). Interviews with representatives from FORR suggest they received derogatory information about Farmer from the Public Defender's Office. They explained they have also heard "on the street" that Farmer is dishonest and he targets African Americans.

8

FORR provided names of a few individuals who claim to be "victims" of Farmer's racial targeting.  One of those individuals complained because in 2019 she (an African American) was stopped at 1 AM in Frankfort by a marked patrol car and Farmer arrived at the scene and asked her what she was doing in the neighborhood at that time of night.  She stated that she told Farmer that she was an adult and she could be anywhere at any time and he had no right to ask her those questions.  He told her that she needed to slow down and allowed her to leave after about a five-minute interaction.  In another example provided by FORR, an African American male had rented a new Cadillac Escalade, was followed for several miles and was stopped by a marked car and Farmer arrived and questioned the driver aggressively after the driver told Farmer he did not have any of the car rental paperwork.  The individual consented to a search of the vehicle.  No contraband was found and the driver was given a citation that was ultimately dismissed.

Below are some statistics obtained from the Franklin County Sheriff Office computerized records concerning the race of individuals in cases investigated by Farmer over the last three years.

|      | African American | Caucasian |
|------|------------------|-----------|
| 2018 | 19               | 33        |
| 2019 | 11               | 51        |
| 2020 | 14               | 22        |

E.  In the last sentence of the paragraph, the Public Defenders state:

*"He has a colored history including resigning from the City of Versailles police department in exchange for no further pursuit of criminal charges against him."*

The City of Versailles provided me access to Farmer's personnel file. The file was also obtained some time ago by the office of The Commonwealth Attorney.

I did not uncover any documentation in the file suggesting Farmer resigned under criminal investigation – as stated by the Public Defenders. Farmer denies having any knowledge of ever being the subject of a criminal investigation. The Public Defender stated they had no evidence Farmer had been under criminal investigation other than Farmer's resignation letter. The Public Defender acknowledged the language in the resignation letter very well could have been "boiler plate language."

During my review of Farmer's file in Versailles, I did observe a number of documents indicating policy violations by Farmer. These transgressions are listed below as described in the file:

- a temporary ban on the use of informants
- a question concerning whether a proper consent to search was obtained for a residence
- use of profanities
- failing to turn on remote microphone during a traffic stop
- charging a DUI without administering a field sobriety test
- involvement in a motor vehicle crash on duty
- failure to appear in court as a witness
- failure to complete reports in a timely manner
- advising an acquaintance that a citizen had filed a complaint
- failure to interview all witnesses
- failure to submit a JC-3
- delay in submitting evidence
- taking photos of a female accident victim without her knowledge
- associating with disreputable persons
- insubordination
- honesty

The above-described policy violations resulted in several verbal and written reprimands and a suspension.

During my file review, I also identified ten letters from citizens thanking and/or commending Farmer.

An Assistant Commonwealth Attorney who also reviewed the file stated he has reviewed many other police officer files and Farmer's file was not unlike many others he has reviewed. He stated the Public Defender's Office filed an open records request for Farmer's file about five years ago. He explained that if the Public Defender's Office possesses substantive derogatory and impeachable information about Farmer, they would have had a duty to utilize that information during the course of the cases that they defended over the last five or six years. He stated they would have had both a moral and legal obligation to raise those issues on behalf of their clients. He stated to the best of his knowledge they have never raised any issues concerning his employment at the Versailles Police Department.

As a part of this investigation, I also reviewed the personnel file from the Franklin County Sheriff's Office. Farmer has twice been named "Deputy of The Year." His file contains one admonishment for the improper handling of evidence. The file contains 11 letters in which citizens and/or other law enforcement agencies applauded Farmer's efforts.

As you know, your office publicized an email address when this matter became public. You invited citizens to submit emails to your office if they had pertinent information. Some citizens sent emails and other wrote letters. There was one email received that is highly critical of Farmer concerning an investigation he conducted in 2014. Some of her accusations were refuted by judges I spoke with. She is also critical of Farmer's actions in a case that is currently pending and has yet to be adjudicated. Six messages were received that were highly complimentary of Farmer. In one instance, a former grand juror stated, "He was one of the most impressive witnesses in law enforcement I encountered over that six months." The grand juror goes on to say she thought his (Farmer's) heart was in the right place. She cites one case in which Farmer was trying to find a woman thought to be involved in a drug cartel. Farmer was concerned for this person's life. Later when this grand juror checked on the case, she determined the female was a person of color. She continues, "I only bring this to your attention because I cannot imagine someone with this much heart and passion being guilty of discrimination or wrongdoing related to race. I thought maybe the

11

opinion of an onlooker might help a man who seems in need of some support."

Aside from the letters/emails, there are many individuals with whom I spoke who are aware of rumors and speculation that Farmer is a corrupt cop. None of these individuals has any firsthand knowledge of corruption but some attribute these rumors primarily to Farmer's association with and the reputation of Farmer's prior partner and the prior Sheriff.

In summary, the January 8, 2021, letter from the Franklin County Public Defender's Office grossly misrepresents available facts. Interviewees suggested three reasons the Public Defenders decided to publicly condemn Farmer.

One reason cited is the fact that Farmer's investigative work results in many of the cases in the Public Defender's Office and greatly increases their workload. Farmer is estimated to account for over 50% of the cases in that office.

The second reason cited is the fact some of the Public Defenders are young attorneys who are trying to make a name for themselves and get frustrated when time after time Farmer's cases result in convictions. Some young and inexperienced attorneys may be naïve enough to believe everything a criminal defendant claims. With time, they may realize criminal defendants often tell self-serving lies.

The third reason cited may be a personal vendetta. In 2016, the Franklin County Sheriff's Office (including Det. Farmer) conducted a drug investigation of the boyfriend of Public Defender Kristin Gonzalez. The case resulted in a search warrant of a residence belonging to Gonzalez's boyfriend and according to the police report, Kristen Gonzalez arrived at the residence and was videotaping the search and was attempting to act in an intimidating a manner. Gonzalez's boyfriend was convicted in that case after cocaine was found in the residence.

On January 8, 2021, the letter signed by Public Defender Gonzalez (and others) and directed to you (Sheriff Quire) was provided to WLEX that afternoon. WLEX claims the letter was sent to them by the Public Defender's Office via email. The Chief Public Defender stated he did

not personally send the letter to WLEX and stated, "no one has volunteered to me that they sent it."

On or about the same day, I have seen a text sent by Public Defender Kristin Gonzalez that in part states as follows, "I've made it my mission to screw with 3 in all the time I've been there; Qualls, Melton and Farmer."

The next day, on January 9, 2021 (the day after the Public Defender's letter was released) Gonzalez texted a friend asking if they could determine if Farmer had a confederate flag tattoo on his arm and explaining, "We wrote a letter that might go viral and they want evidence."

The above-described events seem to be extraordinary efforts by Gonzalez and the Public Defender's Office to publicly disparage/discredit Farmer. As an aside, I have personally determined Farmer does not have such a tattoo.


**Conclusions**

There is simply no evidence I have uncovered suggesting Farmer engaged in any criminal acts or other improprieties while attending the Washington, DC, event on January 6, 2021.

Farmer's attendance at the Washington, DC, rally on January 6, 2021, does not appear to violate any departmental policies. He attended the rally with the knowledge of the department's command staff. However, Farmer does appear to have violated several departmental policies when he posted information about his attendance at the rally on Facebook and participated in a television interview. He also may have been insubordinate when he posted the information after a commander told him not to post information about the rally on Facebook. His social media posts resulted in extensive media attention focused on the Sheriff's Office and precipitated the disparaging letter from the Public Defender's Office.

The evidence I have uncovered overwhelmingly suggests the letter from the Public Defender's Office is a personal attack against Farmer that is

not supported by evidence. The letter is written in a manner that unquestionably ignores the legal premise of "innocent until proven guilty" and is based on unsubstantiated rumor and innuendo. The Public Defender's Office could not provide substantive evidence to support their claims. In addition, they not only sent the letter to you (Sheriff Quire) but at the same time sent the letter to the media, which they refuse to acknowledge. After the letter was publicized, they then sought to obtain information to support their claims.

In addition, virtually all of the claims made by the Public Defender's Office are contradicted by others in the legal system. Farmer is generally known as a hardworking, dedicated detective who carries himself in a professional manner and has been successful in his prosecutions of drug dealers. He is known to sometimes be sloppy with his paperwork and too anxious to move on to the next case before completing all administrative requirements. However, I did not uncover any <u>evidence</u> that supports the myriad of claims made by the Public Defenders.

**Recommendations:**

1. Determine the appropriate level of disciplinary action concerning Farmer's violation of social media policy and insubordination.
2. Determine the appropriate future assignment for Farmer within the Sheriff's Office.
3. Revisit the department's social media policy and revise it as necessary and ensure employees are reminded of the policy on an annual basis.
4. Institute a robust background investigation when hiring employees.
5. Implement annual performance appraisals that are documented in personnel files.

Sir, I hope this investigation is useful to you, your department and the community. If I can be of any further assistance, please don't hesitate to call. I would be remiss if I did not mention that the employees in your office with whom I interacted were very professional and responsive.

Sincerely,
Carl F. Christiansen



# Franklin County Sheriff's Office

### Standard Operating Procedures for Law Enforcement Personnel

| | |
|---|---|
| Chapter Number: 20.5 | Chapter Title: **Public Information** |
| Date of Adoption: 01/01/2019 | Chapter Sub-title: *Social Networking Sites* |
| Last Date of Modification: 04/01/2019 | Revision number: 1.0 |
| By Order Of: Sheriff Chris Quire | Signature: *Chris Quire* |

I. **Purpose:** The purpose of this policy is to direct the employees of the Franklin County Sheriff's Office with respect to the use of the Internet, the worldwide web, and social networking as a medium of communication impacting the Franklin County Sheriff's Office.

II. **Policy:** The internet, blogs, twitter, the world-wide web, social networking sites and any other medium of electronic communication shall not be used in a manner which is detrimental to the mission and function of the Franklin County Sheriff's Office.

III. **On Duty Procedures:**

 A. Employees of the Franklin County Sheriff's Office are prohibited from using agency computers for any unauthorized purpose including surfing the internet or participating in social networking sites.

 B. Employees of the Franklin County Sheriff's Office are prohibited from posting, or in any other way broadcasting, without prior agency approval, information on the internet, or other medium of communication, the business of the Franklin County Sheriff's Office to include; but not limited to:

   a. Photographs/images relating to any investigation of the Franklin County Sheriff's Office.

   b. Video or audio files related to any investigation of the Franklin County Sheriff's Office.

   c. Video, audio, photographs, or any other images etc. which memorialize a law enforcement related action of the Franklin County Sheriff's Office.

   d. Logos/Uniforms/Badges or other items which are symbols associated with the Franklin County Sheriff's Office.

   e. Any other item or material which is identifiable to the Franklin County Sheriff's Office.

IV. **Off Duty Procedures:**

 A. Employees of the Franklin County Sheriff's Office who utilize social networking sites, blogs, twitter or other mediums of electronic communication in their off-duty time shall maintain an appropriate level of professionalism and appropriate conduct so as not to broadcast in a manner which is detrimental to the mission and function of the Franklin County Sheriff's

CONFIDENTIAL – FOR LAW ENFORCEMENT PERSONNEL ONLY

Office or otherwise impairs the efficiency of the Franklin County Sheriff's Office.

**a.** Employees shall not use references in these social networking sites or other mediums of communication that in any way represent themselves as an employee of the Franklin County Sheriff's Office without prior agency approval. This shall include but not be limited to:

    i. Text which identifies the Franklin County Sheriff's Office.

    ii. Photos that depict the logos, patches, badge or other identifying symbol of the Franklin County Sheriff's Office.

    iii. Accounts of events which occur within the Franklin County Sheriff's Office where such information would reveal non-public information under state law; would violate confidentiality provisions of law; would impact ongoing investigations; or would otherwise impact the efficient operations of the Franklin County Sheriff's Office.

    iv. Any other material, text, audio, video, photograph, or image that would be identifiable to the Franklin County Sheriff's Office.

**b.** Employees shall not use a social networking site or other medium of internet communication to post any materials of a sexually graphic nature.

**c.** Employees shall not use a social networking site or other medium of internet communication to post any materials which promote violence.

**d.** Employees shall not use social networking or other medium to promote or disseminate information in favor of recognized subversive entities.

**e.** Employees shall not use a social networking site or other medium of communication to post or broadcast any materials that would be detrimental to the mission and function of the Franklin County Sheriff's Office or otherwise impact agency efficiency.

**B.** Employees of the Franklin County Sheriff's Office are prohibited from using their title as well as any reference to the Franklin County Sheriff's Office in any correspondence to include emails, postings, blogs, twitter, social network sites such as Facebook, unless the communication is of an official nature and is serving the mission of the Franklin County Sheriff's Office. This prohibition also includes signature lines in personal email accounts. An employee may seek agency approval for such use.

**C.** Applicants: All candidates seeking employment with the Franklin County Sheriff's Office shall be required to complete an affidavit indicating their participation in any social networking sites. This affidavit shall include the name of the sites. The candidate shall provide the Franklin County Sheriff's Office with access to their site as part of any background examination. Access shall not include requiring the candidate to provide any password or personal identification numbers.



# Sheriff Chris Quire



**Sheriff of Franklin County, P.O. Box 5260, Frankfort, KY 40602      Phone:(502) 875-8740 Fax: (502) 875-8738**

MEMORANDUM TO: Detective Jeff Farmer

FROM: Sheriff Chris Quire

DATE: 02/15/2021

RE: Letter of Caution- Conduct Unbecoming

Detective Farmer, on January 8th, 2021 the DPA at the Franklin County Trial Office drafted a letter concerning your involvement with the Trump rally in Washington, DC. Since the inception of this letter a thorough investigation was conducted by a third-party organization addressing the questions it raised. This third-party investigation has cleared you from any of the disparaging accusations made against you in the letter.

While the Franklin County Sheriff's Office supports your freedom of speech there are some considerations you should weigh when posting as a member of law enforcement. Posts on social media are public and thusly do not afford you the same level of privacy as a private conversation. Social media posts are generally open for public inspection even if you restrict access to these posts, you run the risk of these posts going beyond the intended audiences. Also, when you have public pictures on your social media accounts which clearly identify you as an employee of the Franklin County Sheriff's Office it becomes easy to tie in questionable comments or posts to the Sheriff's Office and it begins to place you in the realm of conduct unbecoming.

As law enforcement officials we are held to a higher level of public trust. This trust can be easily eroded with even simple public comments. When engaging in public discourse it is important to ask ourselves "What do we stand to gain vs. lose here?" A good guide for dictating what you should say as a law enforcement official is "should I say this comment (post) outside in the public while wearing a uniform?". Would the post bring the office or my reputation into question?

While this letter is not disciplinary in nature it should serve as a notice of caution about comments made, no matter if those comments are made in person or on a social media platform. We must always remember that we are in a profession which requires us to hold ourselves to a higher standard.

To help demonstrate the importance of this matter, the office has paid for you to attend an online training entitled "Social Media and Officer Discipline". This training is conducted by Dolan Consulting Group, a recognized leader in law enforcement leadership and liability training.

# Advanced Investigative Solutions Inc.

### Comprehensive Service to the Corporate and Legal Communities

●

Complex Investigations

Forensic Accounting

Polygraphy

Mediation

Security Assessment

Internal Control Analysis

Training

Crisis Management

Law Enforcement Liaison

Background Investigations

Statement Analysis

Financial Analysis

Trial Preparation

Consulting

February 8, 2021

Sheriff Chris Quire
Franklin County Sheriff
Frankfort, Ky.

Invoice:FCSO-121

January 14, 2021 thru February 6, 2021 Conducted 35 interviews, analyzed data from SO, reviewed files, obtained citizen emails/comments, reviewed media reports and miscellaneous investigation/research. Drafted report.

**Professional Services**
45.5 hrs. @ $125=$5687.50
Mileage 484 @ .58=$280.72

**Total amount due $5968.22**

P.O. Box 6 • Simpsonville,Kentucky40067 • 502-722-1931
E-mail: AIS@TWC.com • www.aisinvestigate.com