UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT LEXINGTON

| | |
|---|---|
| **JEFFREY FARMER** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | Civil Action No. 5:21-CV-00049-KKC |
| v. ) | |
| ) | Electronically filed |
| **KRISTIN GONZALEZ, et al.** ) | |
| ) | |
| **Defendants** ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO
DISMISS PLAINTIFF'S COMPLAINT**

**INTRODUCTION**

Plaintiff's response (the "Response") (DE 14) highlights the inescapable flaws of his claims. The Response fails to rebut inescapable legal conclusions and simply restates Plaintiff's conclusory allegations without sufficient plausible factual support. The publication of Defendants' letter ("the Letter") to the Franklin County Sheriff is simply not actionable under Section 1983 or Kentucky defamation law.

**ARGUMENT**

**I.   THE COURT SHOULD DISMISS PLAINTIFF'S SECTION 1983 FIRST AMENDMENT RETALIATION CLAIM (COUNT 1).**

   **A.  Defendants did not act under color of state law.**

Plaintiff mischaracterizes the legal test that the United States Supreme Court has established for determining whether acts of public defenders are acts under color of state law. In *Polk County v Dodson*, 454 U.S. 312 (1981), the Supreme Court noted its prior ruling "that a person acts under color of state law only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.* at 317-18 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). So the question here is

whether it was possible for the Defendants to write their Letter only because of power they possessed by virtue of state law. The answer, of course, is "no." It was possible for any citizen to write the Letter criticizing Farmer. Power or authority from state law had nothing to do with the ability to write the Letter.

*Polk* held that the employment status of public defenders did not impact whether they were acting under color of state law. The critical issue was whether the "function" being performed by the public defender was a state function. *Polk*, 454 U.S. at 319. *Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816 (7th Cir. 2009), cited by Plaintiff (Response at 14), confirms this. *Rodriguez* evaluated whether a physician treating inmates acted under color of state law and held, "[O]ur focus must be on the particular *function* of the medical care provider in the fulfillment of the state's obligation to provide health care to incarcerated persons." *Id.* at 825 (emphasis in original). Here, Defendants were not fulfilling any obligation of the state when they wrote and published the Letter.

Only when a function performed by a public defender furthers the interest of law enforcement does the public defender act under color of law. Examples of public defenders performing state functions include conspiring with prosecutors to cause a public defender's client to be convicted, *see Tower v. Glover*, 467 U.S. 914 (1984),[1] and creating a systemic policy of failing to seek indigency hearings for criminal defendants facing jail time for unpaid fines, thereby serving the state's interest in exacting punishment, *see Powers v. Hamilton County Public Defender Commission*, 501 F.3d 592 (6th Cir. 2007). However, when the function performed by

---

[1] Plaintiff's reliance on *Tower* is misplaced. Because *Tower* involved an allegation that public defenders conspired with the state to secure the conviction of their clients, the public defenders conceded that the allegations "cast the color of state law over [their] actions." *Id.* at 919. Plaintiff's argument that *Tower* somehow held that intentional acts by a public defender are transformed into state action is baseless. The issue of whether the public defenders were acting under color of state law was not before the Court in *Tower*. Moreover, the suggestion that whether an act is intentional bears on whether a public defender is acting under color of state law is nonsensical and inconsistent with *Polk*'s focus on the function performed by the public defender.

2

the public defender is contrary to the interest of law enforcement, the public defender does not act under color of law. Writing a letter that is critical of law enforcement is even more clearly not state action than a public defender's representation of a client in a criminal case. When public defenders advocate for "society's interest in fair judicial proceedings," as Defendants did in their Letter, they do not act under color of state law. *Powers*, 501 F.3d at 613. Criticizing law enforcement in written form is not "fairly attributable to the State." *Filarsky v. Delia*, 566 U.S. 377, 383 (2012).

Plaintiff's focus on Defendants' purported motivations and malice against him is irrelevant to the question before the Court: whether writing the Letter was a function that fulfilled a state obligation. The Court should dismiss Plaintiff's First Amendment retaliation claim.

### B. Defendants' Letter was not an adverse action that would deter a law enforcement officer of ordinary firmness.

Plaintiff agrees that for him to prevail the Court must determine that Defendants took an adverse action against him that would deter a law enforcement officer of ordinary firmness from participating in political activity. Because the Court must "tailor" its analysis to the circumstances of this case, the Court must consider that Farmer injected himself into the controversy surrounding the events of January 6, 2021 through his attendance and commentary on social media and traditional media. Like lawyers and elected officials, law enforcement officers must have "thicker skin than the ordinary citizen." *Mattox v. City of Forrest Park*, 183 F.3d 515, 522 (6th Cir. 1999).

Farmer attempts to obfuscate this test by focusing not on the actions of Defendants (writing and publishing a letter) but on actions that were taken by people other than the Defendants (e.g., temporary reassignment by the Sheriff and purported harassment of Farmer's children at school). The alleged "adverse action" by the Defendants is writing a letter about Farmer. Farmer does not allege that Defendants reassigned him at work or harassed his children. The proper legal analysis must focus on the action of Defendants (i.e., the Letter). And a police officer, required to have

3

thick skin, of ordinary firmness who chooses to attend and publicize his involvement in an event designed to protest the legitimate election of the President of the United States would not be deterred by a critical letter.[2] Section 1983 is a tort statute, and therefore, the Court "must be careful to ensure that real injury is involved, lest we trivialize the First Amendment by sanctioning a retaliation claim even if it is unlikely that the exercise of First Amendment rights was actually deterred." *Meizibov v. Allen*, 411 F.3d 712, 721 (6th Cir. 2005) (internal quotation marks and citation omitted). Here, the Defendants wrote a letter that caused no real injury. The Court should dismiss the claim.

### C. Defendants' statements are themselves protected First Amendment speech which cannot form the basis of a retaliation claim.

Furthermore, in analyzing the extent of the "adverse action" alleged by Farmer, the Court may take into account only portions of the Letter that could reasonably be construed as defamatory, lest the Court trample on the First Amendment rights of Defendants. *Id.* at 722. Thus, the First Amendment claim fails for the same reasons that the defamation claim fails. Plaintiff continues to misstate the contents of the Letter—claiming, for example, that it includes that "Plaintiff is a traitor who engaged in violence and rioting at the Capital." (Response at 22). No such statement appears in the Letter. The Court should look directly to the language of the Letter in analyzing Defendants' arguments, not Plaintiff's exaggerations.

Courts in this circuit have long held "that criticism of government is at the very center of the constitutionally protected area of free discussion" and that "[t]he freedom to criticize public

---

[2] The cases relied upon by Plaintiff are inapposite. For example, *Bloch v. Ribar*, 156 F.3d 673, 676 (6th Cir. 1998), involved a sheriff disclosing intimate information about the plaintiff's rape by an unknown assailant in retaliation for the plaintiff's criticism. In *Barrett*, the court analyzed whether the defendant's actions were administrative or judicial in nature for the purpose of assessing whether judicial immunity applied to such actions; the court did not even address whether an actionable adverse action under Section 1983 occurred. *See Barrett v. Harrington*, 130 F.3d 246, 253-64 & n.31 (6th Cir. 1997).

officials and expose their wrongdoing is at the core of First Amendment values, even if the conduct is motivated by personal pique or resentment." *Bloch*, 156 F.3d at 681 (internal quotation marks and citations omitted). Defendants enjoyed this right no less than any other citizen.

## II.  THE COURT SHOULD DISMISS PLAINTIFF'S SECTION 1983 CLAIM BECAUSE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY (COUNT 1).

Plaintiff incorporates his other arguments by reference in response to Defendants' qualified immunity argument and contends that he has sufficiently alleged a constitutional violation. While this is incorrect, Plaintiff fails even to attempt to contest the irrefutable facts that no clearly established precedent existed that would inform a reasonable person that, in the United States, public defenders could not write a letter condemning the decision of a law enforcement officer to associate himself with a riotous insurrection at the United States Capitol. Given the lack of a violation of any "clearly established statutory or constitutional rights of which a reasonable person would have known[,]" the Court should dismiss Plaintiff's Section 1983 claim because Defendants are entitled to qualified immunity. *Feathers v. Aey*, 319 F.3d 843, 847-48 (6th Cir. 2003) (internal quotation marks and citation omitted).

## III. PLAINTIFF FAILS TO STATE A COGNIZABLE DEFAMATION CLAIM (COUNT 2).

### A.  Plaintiff fails to identify provably false statements.

Farmer identifies several specific quotes from the Letter that form the basis of his defamation claim. (See Complaint at ¶ 20; Response at 25). None contain provably false statements. As the Kentucky Supreme Court held in *Yancey v. Hamilton*, 786 S.W.2d 854, 857 (Ky. 1989), "[p]ure opinion, which is absolutely privileged, occurs where the commentator states the facts on which the opinion is based, or where both parties to the communication know or assume the exclusive facts on which the comment is clearly based." Here, Farmer does not dispute the truth of the facts on which the opinions expressed in the Letter are based.

5

Farmer does not and cannot contest that he attended the events on January 6, 2021, that the purpose of the event was to interfere with the certification of a duly elected President of the United States, that white supremacists visibly participated, that rioting and violence occurred, that insurrectionists invaded the United States Capitol, that the flag of the Confederacy was waved, that he posted positive commentary about the events on social media, and that, despite the criminal insurrection that occurred, he was still at the steps of the Capitol hours after the insurrection had started. These are the facts—which Farmer does not dispute—that the opinions in the Letter addressed. There are no other unstated, defamatory facts that Plaintiff points to.

Farmer complains about the following portions of the Letter, but none contains provably false statements.

1. "The fact is that a substantial number of individuals who attended this event are white supremacists waving the flag of confederacy. How can minorities in Frankfort feel protected and served by an individual who so clearly flaunts his fraternization with racists?" This is protected opinion about the fact that Farmer positively publicized his participation in an event that resulted in the invasion of the Capitol by white supremacists waving the flag of the Confederacy. Farmer may now regret remaining at the steps of the Capitol long after it was apparent that racists were involved in the riot, but Defendants are permitted to express their opinions about his choice.

2. For the first time in the Response, Farmer takes issue with the Letter's contention that "Deputy Farmer often charges all individuals in a vehicle because he believes they are guilty by association." This is not among the allegedly defamatory statements identified in the Complaint. (*Compare* Response at 25 *with* Complaint at ¶ 20). Regardless, this statement is not provably false because Farmer recently admitted under oath that he does this:

> Defense counsel: "So in the car that night there was a small amount of marijuana found in the console, correct?"

6

> Farmer: "Yes sir."
> Defense counsel: "And you chose to charge all three people with that, correct?"
> Farmer: "Yes sir."
> Defense counsel: "Which is another one of your practices to simply charge everybody that's in a car with what you find, regardless of the evidence, correct?"
> Farmer: "That sometimes happens, yes sir."

(Exhibit A, Preliminary Hearing in *Commonwealth v. Nathan Davis*, Case No. 21-F-00031, Franklin District Court, at 19:10).[3]

3. "This incident at the Capitol is a continuation of poor judgment, recklessness, and bias demonstrated by Deputy Farmer." This does not contain any provably false statements; Defendants were permitted to express their opinion that Farmer's decisions on January 6 demonstrated poor judgment, recklessness, and bias.

4. "He has been involved in many cases which reflect targeting and racial profiling." This is not provably false. The suggestion that someone engages in targeting and racial profiling is not an affirmative statement of fact. Targeting and racial profiling is often the result of implicit bias, which requires an inherently subjective evaluation. In *United States v. Ray*, 803 F.3d 244 (6th Cir. 2015), the Sixth Circuit stated as follows:

> Implicit biases are "often not conscious, intentional, or maliciously-based," as opposed to explicit bias — generally defined as "bias that is openly expressed." Melissa L. Breger, *The (in)visibility of Motherhood in Family Court Proceedings*, 36 N.Y.U. REV. L. & SOC. CHANGE 555, 560 (2012). Further:
>
> [W]hile explicit biases may be shunned and disapproved of in public, implicit biases only strengthen and "harden[]" over time, becoming part of one's core set of beliefs. Distinct from explicit biases, not all implicit biases take the shape of outward animosity or hatred toward a particular group. One can hold beliefs

---

[3] The recording of Farmer's testimony will be conventionally filed with the Court. Farmer argues that "extraneous materials are not properly before the Court on a Motion to Dismiss." (Response at 27). He is incorrect. For example, it is appropriate for the Court to consider the court filings because courts may consider "matters of which a court may take judicial notice" without converting the motion to one for summary judgment. *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) (citations omitted). The Court may take judicial notice of court filings like this recording of the court hearing. *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008); *Granader v. Public Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969).

> stemming from seemingly innocuous stereotypes, which then subsequently form cognitive schemas and implicit biases.
>
> Given its nature, the problem of implicit bias is extensive and pervasive, and its effect is substantial. Researchers argue that these implicit biases can predict behavior, impacting both mundane behavior, such as whether someone engages in simple acts of courtesy, and consequential behavior, such as how someone evaluates another person's work quality.
>
> *Id.* at 560-61; *see also* Mark W. Bennett, *Unraveling the Gordian Knot of Implicit Bias in Jury Selection: The Problems of Judge-Dominated Voir Dire, the Failed Promise of Batson, and Proposed Solutions*, 4 HARV. L. & POL'Y REV. 149, 152 (2010) ("Implicit biases [unlike explicit biases] ... are unstated and unrecognized and operate outside of conscious awareness. Social scientists refer to them as hidden, cognitive, or automatic biases, but they are nonetheless pervasive and powerful. Unfortunately, they are also much more difficult to ascertain, measure, and study than explicit biases.").

*Id.* at 260 n.8 (alterations in original). The assertion that a police officer is engaging in targeting or profiling (which necessarily encompasses the concept of implicit bias) is simply not provable false – it is not capable of measurement and is not conscious.

Even more direct allegations of racism are not actionable: "the observation that someone is 'racist,' i.e., someone who believes that racial differences produce an inherent superiority of a particular race, will almost always depend on the eye of the beholder." *Rapaport v. Barstool Sports, Inc.*, No. 18 Civ. 8783 (NRB), 2021 U.S. Dist. LEXIS 59797, at *33 (S.D.N.Y. March 29, 2021) (footnote omitted). Accordingly, calling someone racist is not an actionable statement of fact. *Id.*

In any event, court records attached to the Motion and the Response further demonstrate that this statement is not provably false. Farmer has been accused of racist behavior in prior court proceedings, including criminal proceedings involving public defenders as counsel of record. Farmer's argument that courts have denied suppression motions does not prohibit the publication of the allegations of his racist behavior. When an officer is accused of targeting and racial profiling

8

in court, the officer cannot prevent lawyers (or, logically extending the absurdity of Farmer's argument, the press) from writing about it. Although the manner in which courts have ruled on suppression motions is irrelevant to whether the sentence in the Letter is provably false, Farmer falsely states that every one of the motions to suppress was denied. For example, as evidenced in the documents attached to the Response, Kyria Glover's pending suppression motion was never ruled on because prior to a ruling, the prosecution agreed to dismiss two of the four original charges from the indictment and Mr. Glover received a sentence of probation. (DE 14-1 at 6-17). Regardless, the court records show that Farmer has been involved in cases reflecting targeting and racial profiling. The Letter fairly characterizes prior accusations against Farmer.

5. "He has a colored history including resigning from the City of Versailles police department in exchange for no further pursuit of criminal charges against him." Farmer cannot dispute that the plain language of the resignation letter states that "the City of Versailles/Versailles Police Department will not further pursue internally or criminally the matters listed on the Statement of Charges dated October 3, 2011." Defendants' description of Farmer's resignation in the Letter is not provably false, and its characterization as a "colored history" is exactly the sort of "rhetorical hyperbole" and other language that defies precise definition which are not actionable. *Welch v. Am. Publ. Co. of State*, 3 S.W.3d 724, 730 (Ky. 1999).

6. "We ask you whether taking part in a treasonous riot is the sort of good decision making necessary for the title of deputy sheriff? At a minimum, it shows a disregard for the rule of law and constitutional process he swore to uphold." Characterizing Farmer's choices on January 6, including remaining at the steps of the Capitol during the insurrection, as taking part in a treasonous riot is fair commentary on the undisputed facts. It does not communicate some unstated, provably false fact. Defendants were permitted to express their opinion that Farmer's support of

9

the effort to prevent the certification of the election and the other events of January 6 showed a disregard for the law and the Constitution.

7. Again for the first time in the Response, Farmer takes issue with the Letter's statement that "[w]e will no longer stand by and allow Deputy Farmer to stain the reputation of Franklin County and cripple the individual lives who we represent." (*Compare* Response at 25 *with* Complaint at ¶ 20). This does not contain any provably false statements; Defendants were permitted to express their opinion that Farmer's actions reflected poorly upon the county and negatively impacted their clients, and such characterization is properly considered language that defies precise definition which is not actionable. *Welch*, 3 S.W.3d at 730.

When analyzing these statements, the "court should err on the side of non-actionability." *Adelson v. Harris*, 973 F. Supp. 2d 467, 487 (S.D.N.Y. 2013) (internal quotation marks and citation omitted). The Court should hold that the statements identified by Plaintiff are not provably false.

    **B.**    **Farmer cannot establish constitutional actual malice.**

Courts around the country have found that law enforcement officers are public officials for purposes of defamation claims; whether Farmer attended President Trump's rally in his official capacity or not has no bearing on such determination. Further, the Response fails to address Defendants' argument that Farmer would also be a limited-purpose public figure for the purposes of this case, given that he injected himself into the particular public controversy at issue. Thus, Farmer is a public figure for the purposes of his defamation claim regardless of which status is applied, and as a public figure must establish by clear and convincing proof that the Letter contains a false statement of fact that was made with actual malice. *Warford v. Lexington Herald-Leader Co.*, 789 S.W.2d 758, 763-74 (Ky. 1990). Farmer cannot meet this standard. As a matter of law,

Defendants could not have known that the statements at issue were false. The statements were true, and Defendants believed and continue to believe they are true.

### IV. PLAINTIFF FAILS TO STATE A COGNIZABLE FALSE LIGHT INVASION OF PRIVACY CLAIM (COUNT 3).

The Complaint fails to allege that the Defendants publicly attributed to him any "characteristics, conduct or beliefs that are false." *McCall v. Courier-Journal & Louisville Times*, 623 S.W.2d 882, 888 (Ky. 1981). The Letter raised concerns regarding Farmer but, as discussed above and in the motion to dismiss, does not state anything provably false about the Plaintiff. Likewise, given that none of the particular statements is false, Plaintiff cannot demonstrate the requisite actual malice to support his false light claim invasion of privacy claim.

### V. PLAINTIFF FAILS TO STATE A COGNIZABLE INVASION OF PRIVACY CLAIM (COUNT 4).

Farmer cannot plausibly argue that the matter publicized was not of legitimate concern to the public, given that the entire basis for Defendants' Letter was to raise questions about Farmer's ability to fairly perform his duties as a law enforcement officer. As a law enforcement officer, Plaintiff's employment records are subject to an open records request by any citizen who wishes to obtain them; indeed, this is how Defendants gained access to the records that Plaintiff would have the Court believe are to be so jealously guarded as to ground legal action. Plaintiff cannot plausibly claim that Defendants intruded into private matters of the Plaintiff or that such matters were of no legitimate concern to the public, and Farmer's claim of invasion of privacy should be dismissed.

### CONCLUSION

Plaintiff has failed to state cognizable claims as to all counts. The Court should dismiss Plaintiff's Complaint with prejudice in its entirety.

Respectfully submitted,

/s/ R. Kenyon Meyer
R. Kenyon Meyer
DINSMORE & SHOHL LLP
101 South Fifth Street, Suite 2500
Louisville, KY 40202
(502) 540-2300
(502) 585-2207 (fax)

Mary L. Bryson
DINSMORE & SHOHL LLP
100 W. Main Street, Suite 900
Lexington, KY 40507
(859) 425-1000
(859) 425-1099 (fax)
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

    I hereby certify that on April 30, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ R. Kenyon Meyer
R. Kenyon Meyer
*Counsel for Defendants*

21511317.2