UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| **JEFFREY FARMER,** | CIVIL ACTION NO. 5:21-49-KKC |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| **KRISTEN GONZALEZ, ET AL.,** | |
| Defendants. | |

\*\* \*\* \*\* \*\* \*\*

This matter is before the Court on the Defendants' motion to dismiss for failure to state a claim. In the Complaint, Plaintiff Jeffrey Farmer alleges violations of his constitutional rights under 42 U.S.C. § 1983 along with common law tort claims for defamation, false light invasion of privacy, and invasion of privacy. [DE 1.] In their motion, Defendants Kristen Gonzalez, Valerie Church, Cheyla Bush, Patrick Brennan, and Nathan Goodrich ask the Court to dismiss Farmer's claims under Federal Rule of Civil Procedure 12(b)(6). [DE 9.] The matter is fully briefed and ripe for review. For the reasons stated below, the Defendants' motion is **GRANTED**, and Farmer's federal § 1983 claims are dismissed with prejudice. The Court declines to exercise supplemental jurisdiction over Farmer's remaining state law claims, and accordingly, they are dismissed without prejudice.

## FACTUAL ALLEGATIONS[1]

Plaintiff Farmer is an experienced law enforcement officer. He has been an officer for twenty years—as a detective in the Franklin County, Kentucky Sheriff's Office for the past ten years, and as a police officer for the City of Versailles, Kentucky before that. [DE 1 at ¶ 11.] Farmer has been a narcotics detective since 2015 and he estimates that, since 2021,

---

[1] The Court will take Farmer's well-pleaded factual allegations as true for purposes of this motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'")

– 2 –

his investigations have accounted for 50% of the criminal cases handled by the public defender's office in Franklin County. [*Id.* at ¶¶ 11, 13.] According to Farmer, this penchant for being involved in investigations resulting in criminal prosecutions led the Defendants, who are public defenders working in Franklin County, to view him with personal animus. [*See id.* at ¶ 13; DE 14 at 1, 16, 32.]

On January 6, 2021, he traveled to Washington, D.C. to hear former President Donald J. Trump speak at a political rally. [*Id.* at ¶ 16.] Shortly after President Trump's speech, a large crowd of his supporters marched to the United States Capitol and "violently broke into the building to try and prevent Congress's certification of the [2020 presidential] election results." *Trump v. Thompson*, 20 F.4th 10, 18 (D.C. Cir. 2021) (citation omitted). Farmer maintains that he did not participate in the insurrection and that he neither entered the Capitol building nor engaged in any criminal activity. [*Id.* at ¶ 17.]

The day after the rally and insurrection, Farmer asserts he was interviewed on "traditional media" and "unequivocally condemned the violence and illegal activities that occurred at our National Capitol the day before." He asserts that the interview was widely circulated. [*Id.* at ¶ 18.] The day after the interview – January 8, 2021 – the Defendants authored and sent the following letter to Farmer's employer, the Franklin County Sheriff:

> January 8th, 2021
>
> Dear Sheriff Quire,
>
> As public defenders, we deal firsthand with the members of the Frankfort community who are most vulnerable. We now feel it is necessary to stand up and voice our serious concerns over the conduct of one of your deputies. As you are aware, Jeff Farmer attended the events in Washington D.C. on January 6th which resulted in the storming of our nation's Capitol Building and multiple fatalities including a federal murder probe into the death of a U.S. Capitol Police officer.
>
> We have no indication that Deputy Farmer left the crowd when rioting began, nor do we have any proof that Deputy Farmer was not himself actively involved in treasonous behavior.
>
> Deputy Farmer boasted about his involvement in many outlets, including a Facebook post in which he stated *"Gonna be an epic day!! Most diverse group of people I've ever seen in my life."* (Deputy Farmer has since deleted his Facebook account.) The fact is that a substantial number of individuals who attended this event are white supremacists waving the flag of confederacy. How can minorities in Frankfort feel protected and served by an individual who so clearly flaunts his fraternization with racists?
>
> Deputy Farmer often charges all individuals in a vehicle because he believes they are guilty by association. By that logic, what does that say about yourself and your department?
>
> This incident at the Capitol is a continuation of poor judgment, recklessness, and bias demonstrated by Deputy Farmer. In the past, Deputy Farmer has posted publicly about his disbelief in systematic racism and unconscious bias. He has been involved in many cases which reflect targeting and racial profiling. He has a colored history including resigning from the City of Versailles police department in exchange for no further pursuit of criminal charges against him.
>
> We ask you Sheriff Quire whether Deputy Farmer's conduct conflicts with the values expressed by the Franklin County Sheriff's Department: service, integrity, courage, fairness, and innovation? We ask you whether taking part in a treasonous riot is the sort of good decision making necessary for the title of deputy sheriff? At a minimum, it shows a disregard for the rule of law and constitutional process he swore to uphold. We call upon you to take action to develop a police force which is known for protecting and serving minorities, not targeting and harassing.
>
> We will no longer silently stand by and allow Deputy Farmer to stain the reputation of Franklin County and cripple the individual lives who we represent. We call upon you to re-evaluate the role and placement that Deputy Farmer has in the Sheriff's Department.
>
> Sincerely,
>
> Public Defenders at the Franklin County Trial Office
>
> Nathan Goodrich   Kristin Gonzalez   Cheyla Bush
>
> Patrick Brennan   Valerie Church                EXHIBIT A

[DE 1-1.] The Defendants also posted the letter on social media and distributed it to a number of media organizations resulting in the publication of several online articles reciting the Defendants' accusations. [DE 1 at ¶ 23–24.]

The Franklin County Sheriff responded to the Defendants' letter swiftly. He reassigned Farmer to another role in the department and promised a thorough investigation of the Defendants' allegations. *Franklin County Sheriff Reassigns Deputy After Complaints About Him Attending the U.S. Capitol Rally*, WYMT, (Jan. 10, 2021, 9:23 PM),

https://www.wymt.com/2021/01/11/franklin-county-sheriff-reassigns-deputy-after-complaints-about-him-attending-the-us-capitol-rally/. The Sheriff hired an outside investigator, and on February 15, 2021, the investigator released a report that concluded, among other things, there was no evidence Farmer engaged in criminal acts on January 6, and that "the evidence . . . suggests the letter from [Defendants] is a personal attack against Farmer that is not supported by evidence." [*Id.* at ¶ 29; DE 1-2.]

According to Farmer, the Defendants' letter contains numerous false and defamatory statements, including: that he attended events that led to storming of the Capitol, that he failed to leave the crowd when rioting began, that he was involved in treasonous behavior, that he fraternizes with racists and white supremacists who waved the confederate flag, that he was involved in racial targeting, profiling, and harassment in his job, that he resigned from the City of Versailles police department in exchange for not being charged criminally, and that he showed a disregard for the rule of law. [DE 1 at ¶ 20.] And as a result of the Defendants' actions, Farmer claims to have suffered a variety of harm, including reassignment at work, reputational harm and personal harassment, and his children fearing for their safety after being attacked and harassed at school. [*Id.* at ¶ 27.]

## STANDARD OF REVIEW

The purpose of a motion to dismiss under to Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). To survive a Rule 12(b)(6) motion, a complaint must include factual allegations that, if accepted as true, are sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Put another way, "the plaintiff must allege facts that . . . are sufficient to raise a right to relief above the speculative level." *Wesley v. Campbell*, 779 F.3d 421, 427 (6th Cir. 2015) (quoting *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 538 (6th Cir. 2012)).

Although "plaintiffs need not meet a 'probability requirement' . . . they must show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Wesley*, 779 F.3d at

427–28 (quoting *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011)). Because the "defendant has the burden of showing that the plaintiff has failed to state a claim for relief," *id.* at 428, when considering a Rule 12(b)(6) motion, the Court will presume that all well-pleaded material allegations of the complaint are true and will draw all reasonable inferences in the plaintiff's favor. *Wells Fargo Fin. Leasing, Inc. v. Griffin*, 970 F. Supp. 2d 700, 704 (W.D. Ky. 2013) (citing *Total Benefits Plan. Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008)).

## ANALYSIS

Farmer has asserted four claims: a federal claim under Title 42 U.S.C. § 1983 for First Amendment retaliation, along with state law claims for defamation, false light invasion of privacy, and invasion of privacy. In their motion to dismiss, the Defendants ask the Court to dismiss each of Farmer's claims under Federal Rule of Civil Procedure 12(b)(6.

### I.   First Amendment Retaliation Claim Under § 1983

Section 1983 allows individuals to sue government officials for violations of their civil rights. Section 1983 does not itself create any substantive rights, but merely provides an individual with remedies for deprivations of rights that are established elsewhere. *Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001) (citing *Tuttle v. Oklahoma City*, 471 U.S. 808 (1985)). And when a government official retaliates against a person for exercising their First Amendment rights, that retaliation can be an actionable constitutional violation. *Thaddeus-X v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1999).

Farmer alleges that the Defendants deprived him of his First Amendment rights to petition, assemble, and engage in free speech by subjecting him to retaliatory actions, and that they did so under color of state law by using or abusing their authority as public defenders. [DE 1 at ¶¶ 30–40.] In their motion to dismiss, the Defendants argue, among other things, that they did not act under color of state law. Because "a determination as to whether the defendant[s] acted under the color of state law is a threshold matter," *Wilkerson v. Warner*, 545 F. App'x 413, 419 (6th Cir. 2013), the Court addresses that argument first.

Section 1983 provides a cause of action when federal rights are violated by someone acting "under color of any statute, ordinance, regulation, custom, or usage, of any State." 42 U.S.C. § 1983. This "state action" requirement has been interpreted to mean that "a defendant must be acting in a state capacity to be liable under the statute." *Lindke v. Freed*, 37 F.4th 1199, 1202 (6th Cir. 2022) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). Ultimately, the inquiry "turns on whether a defendant's actions are 'fairly attributable to the State.'" *Id.* (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

Not every act of a government official is action under color of state law. The state action doctrine "draws a line between actions taken in an official capacity and those taken in a personal one." *Id.* "[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West*, 487 U.S. at 50. But when an official acts "'in the ambit of [his] personal, private pursuits,' section 1983 doesn't apply." *Lindke*, 37 F.4th at 1202 (quoting *Stengel v. Belcher*, 522 F.2d 438, 441 (6th Cir. 1975)).

In a § 1983 action brought against a public defender, courts typically must determine whether the defendant was performing a "traditional function as counsel to a defendant in a criminal proceeding," which is not state action, or an "administrative" function, which is state action. *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 611–12 (6th Cir. 2007). Here, however, the question is not whether Defendants were acting as counsel for indigent defendants or as state administrators. The question here is whether Defendants were acting in a state capacity or a private capacity.

Recently, the Sixth Circuit held that when confronted with the question of whether a public official was acting in a state capacity or private capacity, courts should apply the "state-official test." *Lindke*, 37 F.4th at 1202. Under that inquiry, a public official's acts may be state action when they (1) are part of the official's "actual or apparent duties," or (2) "couldn't happen in the same way without the authority of the office." *Id.* at 1203.

– 6 –

In his complaint, Farmer argues that the Defendants acted under color of state law when they wrote and sent the letter to the Franklin County Sheriff, shared the letter and news articles about it on social media, and released the letter to the media. [DE 1 at ¶¶ 20, 23–26, 33, 36.] In writing the letter, Defendants were not fulfilling any actual duties of a public defender. "[T]he most straightforward instance of an actual duty is when the text of state law requires" a state official to do something. *Lindke*, 37 F.4th at 1202. In other words, an act "can constitute state action if the law itself provides for it." *Id.* But "no state law, ordinance, or regulation compelled" the Defendants to act as they did; writing and sending the letter, posting on social media, and releasing the letter to the media were not "designated by law as one of the actual or apparent duties of [their] office." *Id.* at 1204–05; Ky. Rev. Stat. § 31.010(1)–(2) (providing that the purpose of public defenders in Kentucky is to provide legal representation to "indigent persons accused of crimes" and protect "the rights of persons with disabilities"); *see also* Ky. Rev. Stat. § 31.030(1)–(15) (granting public defenders specific authorities and duties to accomplish the purposes set forth in § 31.010).

But state action is not limited to an official's actual or apparent duties. To act under color of law is to act under the "pretense" of law, which in the context of § 1983, includes misuse or abuse of the authority conferred by the state. *Screws v. United States*, 325 U.S. 91, 111 (1945) ("[U]nder 'color' of law means under 'pretense' of law. . . . Acts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it."); *West*, 487 U.S. at 49 ("[A]cting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law made possible only because the wrongdoer is clothed with the authority of state law.'"). Thus, acting under color of state law "does not mean [a defendant] must be acting within the scope of [his] authority, or even in connection with his official duties." *Miller v. City of Shaker Heights*, 438 F. Supp. 3d 829, 839 (N.D. Ohio 2020). So long as the acts are accompanied by sufficient "indicia of ostensible state authority," a defendant may engage in "conduct occurring under the color of state law." *Burris v. Thorpe*, 166 F.App'x 799, 802 (6th Cir. 2006).

Here, the Defendants' acts are accompanied by several potential indicia of state authority: the letter stated the Defendants were public defenders, the letter was sent from an official state email account, and the Defendants authored the letter during working hours. But even with these factors, the Defendants' actions are missing an essential ingredient of state action: authority or power "possessed by virtue of state law." *See West*, 487 U.S. at 49 (1988) ("[A]cting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."). As explained above, the Defendants did not act under any state-imposed duty, and it is unclear what power or authority a public defender might have that enabled the Defendants' actions. Farmer claims the Defendants "abused the authority of their offices," [DE 1 at ¶ 33], but he fails to articulate the authority they allegedly abused.

The answer here is obvious: with regard to the acts at issue, the Defendants had no power "possessed by virtue of state law" to exercise. Any person could have written and sent the letter, posted on social media, and shared the letter with the media. Thus, the Defendants' actions were not "made possible *only* because [they were] clothed with the authority of state law." *West*, 487 U.S. at 49 (emphasis added). Rather, the "nature of the[ir] act[s]" was "functionally equivalent to that of any private citizen" and therefore not under color of state law. *Redding v. St. Eward*, 241 F.3d 530, 533 (6th Cir. 2001) (holding that when the "nature of the act performed" by a public official is "functionally equivalent to that of any private citizen," she does not act under color of state law).

This conclusion is further confirmed by the Sixth Circuit's recent decision in *Lindke*. In that case, the defendant James Freed was the city manager of Port Huron, Michigan. Prior to taking office, Freed created a public Facebook page that designated him as a "public figure." When Freed was appointed city manager, he updated his Facebook page to reflect that new title, and he described himself on the page as "Daddy to Lucy, Husband to Jessie and City Manager, Chief Administrative Officer for the citizens of Port Huron, MI." He also

listed the city's website as his page's website, the city's general administrative email as his page's contact information, and the city hall address as his page's address. After the COVID-19 pandemic hit, Freed used his Facebook page to share the policies he had initiated for the city and related news articles. The plaintiff Keven Lindke commented on Freed's post with criticisms of the city's COVID-19 policies. Freed deleted Lindke's comments and blocked Lindke from posting further comments on the Facebook page. Lindke then sued Freed under § 1983, arguing that Freed had violated his First Amendment rights by deleting his comments and preventing him from posting any comments on the page.

In determining that Freed's actions were not under color of state law, the court rejected the plaintiff's claim that Freed had engaged in state action by using "'the trappings of an official, state-run account' to give the impression that the page operated under the state's imprimatur." *Lindke*, 37 F.4th at 1206. The plaintiff argued that the court should find state action because "the presentation of the account is connected with the official's position," and in support of that argument he pointed to "Freed's use of a city address, email, and website on the Facebook page, along with a profile photo featuring Freed wearing his city-manager pin and his frequent use of 'we' and 'us.'" *Id.* at 1205–06. But the court disagreed, explaining that "Freed gains no authority by presenting himself as city manager on Facebook" and "[h]is posts do not carry the force of law simply because the page says it belongs to a person who's a public official." *Id.* at 1206. Rather than focusing on the "page's appearance or purpose," the court focused on "the actor's official duties and use of government resources or state employees." *Id.* The court held that Freed's actions were missing these "state-action anchors" because "Freed did not operate his page to fulfill any actual or apparent duty of his office" and did not "use his governmental authority to maintain it. Thus, he was acting in his personal capacity—and there was no state action." *Id.* at 1207.

Those same "state-action anchors" are missing here. Like Freed, the Defendants did not use government employees for any of their activity. There is no allegation that anyone other than the Defendants themselves were involved in writing, sending, and disseminating

the Defendants' letter. And, like Freed, the Defendants did not use government funds in their actions. To the extent that they used state resources (the paper the letter was written on, their official email accounts, and time at the office), such use was minimal and "isn't enough to transform a personal [act] into an official one." *See id.* at 1205 (finding defendant's use of state employees to take photos for his Facebook page to be "de minimis help" that does not "transform a personal page into an official one").

The "presentation-based factors" of Defendants' actions are also not sufficient to render them state action. The letter bore even fewer "trappings" of state action than Freed's Facebook page—the only indicia of official authority are the Defendants identifying themselves as public defenders and using an official email account to send the letter. It was not written on official letterhead, did not purport to be official action, and had nothing to do with Defendants' duties as public defenders. The "trapping" of identifying oneself as a public official is far short of what is required to constitute state action, as evidenced by *Lindke*. Likewise, use of an official email account is at most a de minimis indicator of state authority.

The same is true of Defendants' posting on social media and sharing the letter with media. Those acts are accompanied by the same minimal indicia of state authority, which falls far short of rendering them state action. Posting on social media and releasing a personal letter to the media are unrelated to the Defendants' duties as public defenders and are acts that the Defendants could have taken in the same way even if they were not public defenders. Thus, they were not acts under color of state law.

While the Defendants' time and energy might be better used in representing indigent clients, they did not act as state officials in writing a letter criticizing Farmer to his employer and the public. They could have acted in the same manner without the authority of their office. Put simply, their actions were not accompanied by sufficient indicia of state authority to constitute action under color of state law. Accordingly, Farmer's First Amendment retaliation claim under § 1983 must be dismissed for failure to state a claim.

## II.     State Law Tort Claims

In addition to his federal § 1983 claim, Farmer has brought three common law tort claims: defamation, false light invasion of privacy, and invasion of privacy. The federal claim that was the basis of the Court's subject matter jurisdiction has been dismissed, which means the Court must decide whether to retain supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367. Where a district court has original jurisdiction over federal claims and supplemental jurisdiction over state claims, the court has "broad discretion in deciding whether to exercise supplemental jurisdiction" after it has dismissed all claims over which it has original jurisdiction. *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 196 F.3d 617, 620 (6th Cir. 1999).

In making this determination, a court weighs considerations of judicial economy, convenience, fairness, and comity. *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). "Comity to state courts is considered a substantial interest; therefore, [the Court] applies a strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed—retaining residual jurisdiction 'only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh [any] concern over needlessly deciding state law issues.'" *Packard v. Farmers Ins. Co. of Columbus*, 423 F. App'x 580, 584 (6th Cir. 2011) (quoting *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006)). When all federal claims are dismissed before trial, "there is a strong presumption in favor of dismissing supplemental claims." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996). That presumption can be overcome in "unusual circumstances," such as "dismissal on the eve of trial" or when "parties and the court ha[ve] spent years" on the case, *id.* at 1255, but "[a] federal court that has dismissed a plaintiff's federal-law claims should ordinarily not reach the plaintiff's state law claims." *Moon*, 465 F.3d at 728.

No unusual circumstances are present here. The Court has dismissed the sole federal claim at the earliest possible stage of the proceedings, has held no hearings, and has based

its ruling purely on written motions. "These same written materials could be submitted to a state judge for his [or her] decision, with only minimal rewriting." *Musson Theatrical*, 89 F.3d at 1256. No discovery has occurred, and no case schedule is in place. Further, "because only state law claims remain, those claims should, in the interests of comity, be heard by [a state court], which has greater familiarity with the unique questions of state law currently in dispute." *Woolf v. Mary Kay, Inc.*, 176 F. Supp. 2d 654, 660 (N.D. Tex. 2001); *see also Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 815 (6th Cir. 2004) (explaining that "Kentucky state courts" are "more familiar" with and "better able to resolve" "questions of state law").

Given the nascency of this action, the "strong" presumption against exercising supplemental jurisdiction persuades the Court that doing so would be imprudent under these circumstances. The Court will therefore decline to exercise supplemental jurisdiction and dismiss Farmer's state law claims without prejudice.

## CONCLUSION

Accordingly, for the reasons stated in this opinion, the Court hereby **ORDERS** that the Defendants' motion to dismiss [DE 9] is **GRANTED** as follows:

(1) Count I of Plaintiff Jeffrey Farmer's complaint, asserting a claim under 42 U.S.C. § 1983 for First Amendment Retaliation, is **DISMISSED WITH PREJUDICE**; and

(2) The Court declines to exercise supplemental jurisdiction over Plaintiff Jeffrey Farmer's remaining state law claims (Counts II, III, and IV), and those claims are **DISMISSED WITHOUT PREJUDICE**.

This 29th day of September, 2022.

*Karen K. Caldwell*
KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY